1  Hazel U. Poei (SBN 214928)
   poeih@jacksonlewis.com
2  JACKSON LEWIS P.C.
   725 South Figueroa Street, Suite 2500
3  Los Angeles, California  90017-5408
   Telephone:  (213) 689-0404
4  Facsimile:  (213) 689-0430

5  Attorneys for Defendants
   VIVEK GARIPALLI, SEQUOIA HEALTHCARE SERVICES, LLC, and
6  WINTHROP "WIN" HAYES

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 ESSEX CAPITAL CORPORATION, a         **CASE NO.: 2:17-CV-04055-BRO-SK**
   California corporation,
12                                      [*Assigned to the Honorable Beverly Reid*
              Plaintiff,                *O'Connell*]
13
        vs.
14                                      **DEFENDANTS' MEMORANDUM OF**
                                        **POINTS AND AUTHORITIES IN**
15 VIVEK GARIPALLI, an individual,      **SUPPORT OF MOTION TO DISMISS**
   SEQUOIA HEALTHCARE SERVICES,         **COMPLAINT OR, IN THE**
16 LLC, a New Jersey limited liability  **ALTERNATIVE, TO TRANSFER**
   corporation, WINTHROP "WIN" HAYES,   **VENUE**
17 an individual, and DOES 1 through 50
   inclusive
18                                      Date:       July 17, 2017
              Defendants.              Time:       1:30 pm
19                                      Courtroom:  7C

20                                      [Filed Concurrently with Notice;
                                        Declarations of Vivek Garipalli, Winthrop
21                                      Hayes, and  Louis Modugno; Request for
                                        Judicial Notice; and (Proposed) Order]
22

23

24

25

26

27

28
   Case No:  2:17-CV-04055-BRO-SK      1    MEMORANDUM    OF    POINTS    AND
                                            AUTHORITIES IN SUPPORT OF MOTION
                                            TO DISMISS OR, IN THE ALTERNATIVE,
                                            TO TRANSFER VENUE

# Table of Contents

I.    INTRODUCTION .................................................................................6

II.   STATEMENT OF MATERIAL FACTS .............................................6

    A.   Passaic Healthcare Services, LLC d/b/a Allcare Medical ................6

    B.   Essex Purchases Equipment from Allcare and Leases it Back........6

    C.   Garipalli and Hayes' Alleged Misrepresentations to Essex ............7

    D.   Allcare Secures Funding from MidCap Financial Services, LLC....7

    E.   Garipalli and Hayes' Alleged False Assurances to Essex ...............8

    F.   Allcare Files for Bankruptcy After Essex Declares It in Default......8

    G.   Nature of Sequoia's Contact with California ...................................8

    H.   Nature of Sequoia's Contact with Essex .........................................9

    I.   Nature of Hayes and Garipalli's Contact with California ..............10

    J.   Nature of Hayes and Garipalli's Contact with Essex .....................10

II.   LEGAL ARGUMENT ........................................................................11

    A.   This Court Does Not Have Personal Jurisdiction Over the Defendants........11

    B.   None of the Defendants are Subject to "General Jurisdiction" in California. ...........................................................................................11

        1.   Sequoia Is Not Subject to General Jurisdiction in California. ...........11

        2.   Garipalli and Hayes Are Not Subject to General Jurisdiction in California ........................................................................................12

    C.   None of the Defendants are Subject to "Specific Jurisdiction" Relating to the Allcare Leases.............................................................13

        1.   Sequoia Is Not Subject to Specific Jurisdiction in California............13

        2.   Neither Garipalli nor Hayes Are Subject to Specific Jurisdiction in California.........................................................................................14

    D.   This Case Should Be Dismissed as Improperly Venued ...................15

    E.   In the Alternative, This Case Should Be Transferred to the United States District Court for the Southern District of New York. .......................16

        1.   This Case Could Have Been Brought in the Southern District of New York. ........................................................................................16

2.     The Public and Private Factors Weigh In Favor of a New York Forum.................................................................................16

III.   CONCLUSION .................................................................................20

**Cases**

*Amini Innovation Corp. v. JS Imports, Inc.*
  (N.D. Cal. 2007) 497 F. Supp. 2d 1093, 1104 .................................. 13

*Brand v. Menlove Dodge*
  (9th Cir. 1986) 796 F.2d 1070, 1073 ........................................ 12

*Chemrisk, LLC v. Chappel,*
  (N.D. Cal. 2011) 2011 WL 1807436 ........................................... 15

*Davis v. Metro Productions, Inc.*
  (9th Cir. 1989) 885 F.2d 515, 520 ........................................... 14

*Daimler AG v. Bauman,*
  (2014) 134 S. Ct. 746, 753 ................................................ 11, 12

*Fodor v. Berglas*
  (C.D. Cal. 1994) 1994 WL 822477 ............................................. 18

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
  (2011) 131 S. Ct. 2846      11, 12

*Google Inc. v. Rockstar Consortium U.S. LP*
  (N.D. Cal. 2014) 2014 U.S. Dist. LEXIS 53757 ............................... 13

*Hatch v. Reliance Ins. Co.*
  (9TH Cir. 1985) 758 F.2d 409, 414 ........................................... 16

*Hendricks v. New Video Channel America, LLC*
  (C.D. Cal. 2015) 2015 U.S. Dist. LEXIS 74677 ........................... 12, 13

*In re: First Am. Home Buyers Prot. Corp. Class Action Litig.*
  (S.D. Cal. 2016) 313 F.R.D. 578, 603 ....................................... 17

*Labrie v. Cobain*
  (C.D. Cal. 2013) 2013 WL 12131720 ........................................... 19

*Menken v. Emm,*
  503 F.3d 1050, 1056 (9th Cir. 2007) ........................................ 11

*Panavision Int'l, L.P. v. Toeppen*
  (9th Cir. 1988) 141 F.3d 1316, 1322 ........................................ 15

*Schwarzenegger v. Fred Martin Motor Co.*
  (9th Cir. 2004) 374 F.3d 797, 801 .......................................... 11

*Span Const. & Eng'g, Inc. v. Stephens*
  (E.D. Cal. 2006) 2006 WL 1883391 ........................................... 12

*SP Inv. Fund I, LLC v. Lowry*
  (C.D. Cal. 2016) 2016 U.S. Dist. LEXIS 17 ........................ 16, 17, 18, 19

*VB Conversions LLC v. New Solutions, Inc.*
  (C.D. Cal. May 20, 2013) 2013 U.S. Dist. LEXIS 2370723      11

*Weller v. Cromwell Oil Co.*
  (6th Cir. 1974) 504 F.2d 927 ................................................ 14

*Winery v. Graham,*
  (N.D. Cal. 2007) 2007 U.S. Dist. LEXIS 22858 ............................... 14

Case No:  2:17-CV-04055-BRO-SK               4    MEMORANDUM    OF    POINTS    AND
                                                   AUTHORITIES IN SUPPORT OF MOTION
                                                   TO DISMISS OR, IN THE ALTERNATIVE,
                                                   TO TRANSFER VENUE

**Federal Rules**

Federal Rules of Civil Procedures 12(b)(2) and (b)(3) ...................................................... 10

**Federal Statutes**

28 U.S.C. §1391(b).................................................................................................15

28 U.S.C. 1404(a) ..................................................................................................... 16

## I.  **INTRODUCTION**

Defendants Sequoia Healthcare Services, LLC ("Sequoia"); Vivek Garipalli ("Garipalli"); and Winthrop "Win" Hayes ("Hayes")(collectively, "Defendants") bring this Motion to Dismiss or, in the Alternative, to Transfer Venue, pursuant to Rules 12(b)(2) and (3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404 and request the following relief: (i) to dismiss the Complaint in its entirety against all Defendants for lack of personal jurisdiction or improper venue; or, in the alternative, (ii) to transfer this case to the United States District Court for the Southern District of New York.

## II.  **STATEMENT OF MATERIAL FACTS**

### A.  **Passaic Healthcare Services, LLC d/b/a Allcare Medical**

According to the Complaint, Passaic Healthcare Services, LLC ("Passaic") d/b/a Allcare Medical ("Allcare") was a New Jersey based durable medical equipment company, which operated in New York. *See* Complaint at ¶ 16.  Allcare was largely owned by Sequoia and Garipalli, but Sequoia was also a creditor of Allcare. *Id.* Hayes was the President of Allcare. *Id.*

### B.  **Essex Purchases Equipment from Allcare and Leases it Back**

In the Spring of 2011, Hayes sought to obtain equipment financing from Plaintiff Essex Capital Corporation ("Essex") on behalf of Allcare. *See* Complaint at ¶ 17.  Under the proposed terms, Essex would purchase equipment from Allcare and then lease that same equipment back to Allcare pursuant to a 36-month lease. *Id.*  On June 23, 2011, Essex and Allcare consummated the transaction by executing a Commercial Lease Agreement (the "First Lease Agreement"). *See* Complaint at ¶ 18. Essex and Allcare subsequently executed several Commercial Lease Agreements (the "Lease Agreements") that mirror the terms of the First Lease Agreement. *See* Complaint at ¶ 18. By the end of 2014, Allcare was leasing from Essex equipment worth approximately $10 million. *See* Complaint at ¶ 18.

///

Case No:  2:17-CV-04055-BRO-SK                6         MEMORANDUM OF POINTS AND
                                                        AUTHORITIES IN SUPPORT OF MOTION
                                                        TO DISMISS OR, IN THE ALTERNATIVE,
                                                        TO TRANSFER VENUE

**C.     Garipalli and Hayes' Alleged Misrepresentations to Essex**

According to the Complaint, in early June 2013, after most of the Lease Agreements were executed, John Accumanno ("Accumanno"), former Director of Finance for Landauer Metropolitan, allegedly warned Allcare's management that Allcare could expect a reduction in receivables of approximately 35% because of changes in Medicare's reimbursement policy. *See* Complaint at ¶ 21.   In December 2013, Accumanno prepared an analysis showing that Allcare's total debt in December 2012 was $16,378,745. *Id.* By June 2013, Allcare's debt increased to over $18.6 million. *Id.*

Notwithstanding, as set forth in the Complaint, throughout 2013, Garipalli and Hayes allegedly represented to Essex's principal, Ralph Iannelli ("Iannelli"), that Allcare was on track and that they projected revenue for Allcare to be at least $125 million. *See* Complaint at ¶ 19.  In addition, Hayes allegedly provided Essex with financial statements that were inconsistent with internally distributed financial statements and falsely overstated Allcare's income by approximately $5.5 million. *See* Complaint at ¶ 22.

**D.     Allcare Secures Funding from MidCap Financial Services, LLC**

In October 2013, Allcare sought a $10 million credit facility from MidCap Financial Services, LLC ("MidCap").  *See* Complaint at ¶ 24.  To induce Essex to forbear from exercising certain rights under the Lease Agreements for a period of one year – a condition of MidCap to issue the credit facility – Garipalli and Hayes allegedly represented to Iannelli that Allcare was required to use the credit facility exclusively for ongoing operations of Allcare, and was prohibited from paying creditors or investors. *See* Complaint at ¶ 24. Yet, after securing the financing, Garipalli and Hayes allegedly used $2,350,000 of the loan to repay debts owed to Sequoia. *See* Complaint at ¶ 25.

In April 2014, MidCap significantly reduced Allcare's line of credit. *See* Complaint at ¶ 26.  Notwithstanding the credit reduction, Garipalli and Hayes allegedly continued to communicate a positive forecast to Essex. *See* Complaint at ¶ 27.

1

### E.   Garipalli and Hayes' Alleged False Assurances to Essex

2      After learning that MidCap had ceased funding Allcare, Iannelli confronted Hayes
3 and demanded an explanation.   *See* Complaint at ¶ 28.  Hayes allegedly blamed the loan
4 reduction on a "glitch in the system," and reassured Iannelli that Allcare had no problems
5 with receivables.   *Id.*   When Iannelli confronted Garipalli, Garipalli allegedly assured
6 Iannelli that Garipalli would personally make good on the lease payments if Essex refrained
7 from declaring a default.  *Id.*

8      In or around June 2014, Hayes allegedly confessed to Iannelli that MidCap reduced
9 Allcare's lien as a result of concerns with receivables.  *See* Complaint at ¶ 29.  Although
10 Allcare was making only intermittent payments under the Lease Agreement, Hayes assured
11 Iannelli that Allcare needed approximately 90 days to make everyone whole.  *Id.*  Essex
12 refrained from defaulting Allcare to provide Allcare with additional time to satisfy all of
13 its obligations.  *Id.*

14

### F.   Allcare Files for Bankruptcy After Essex Declares It in Default

15      At the end of 2014, Essex sent a default letter to Garipalli. *See* Complaint at ¶ 33.
16 Thereafter, on December 31, 2014, Allcare filed a voluntary petition for relief under
17 Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for
18 the District of New Jersey (the "New Jersey Bankruptcy Matter").  *Id.*

19      Essex appeared in the New Jersey Bankruptcy Matter.  On May 20, 2015, Essex filed
20 a Proof of Claim in the amount of $4,328,362.74.  *See* Exhibit "**E**" to Request for Judicial
21 Notice.   In addition, Essex commenced an Adversary Proceeding in the New Jersey
22 Bankruptcy Matter by filing a Complaint against Allcare, among others.  *See* Exhibit "**F**"
23 to Request for Judicial Notice.  The adversary proceeding was eventually voluntarily
24 dismissed.

25

### G.   Nature of Sequoia's Contact with California

26      Sequoia is a limited liability company formed in the State of New Jersey.
27 [Declaration of Vivek Garipalli ("Garipalli Decl."), ¶ 2].   The sole members of Sequoia

28

1   are Titus Ventures, LLC ("Titus"), a Delaware limited liability company, Infinity

2   Healthcare Strategies, LLC ("Infiniti"), a Delaware limited liability company, and

3   Sunnyside Enterprises, LLC ("Sunnyside"), a New Jersey liability company. [*Ibid*].

4        Titus has one member, Vivek Garipalli Family Trust 1 (the "Trust"), an inter vivos

5   trust. [Garipalli Decl., ¶ 3]. Lakshmi Garipalli ("Ms. Garipalli") is the trustee of the Trust.

6   [*Ibid*]. Ms. Garipalli is a citizen of New Jersey, and resides in Colts Neck, New Jersey.

7   [Garipalli Decl., ¶ 3].

8        Infiniti has one member, Jeffrey Mandler ("Mr. Mandler"). [Garipalli Decl., ¶ 3].

9   Mr. Mandler is a citizen of Pennsylvania, and resides in West Chester, Pennsylvania. [*Ibid*].

10  Similarly, Sunnyside has one member, James P. Lawler ("Mr. Lawler"). Mr. Lawler is a

11  citizen of New Jersey, and resides in New Jersey. [*Ibid*].

12       Sequoia does not have any physical presence in California. [Garipalli Decl., ¶ 4].

13  Specifically, Sequoia has never been licensed to do business in California; does not have a

14  registered agent for service of process in California; does not maintain an office in

15  California; does not have employees or agents based in California (other than its counsel

16  in this legal proceeding); does not hold a bank account in California; does not have a

17  telephone listing in California; has never paid any business tax in California; does not

18  advertise in or otherwise directly aim any of its marketing activities at California; and does

19  not own real or personal property in California. [Garipalli Decl., ¶ 4].

20  **H.    Nature of Sequoia's Contact with Essex**

21       The Complaint does not allege any direct contact between Sequoia and Essex.

22  Excluding the paragraph identifying it, Essex's reference to Sequoia is limited to two

23  allegations:  that Sequoia was the "parent" or "affiliate" of AllCare (which later filed for

24  bankruptcy) and that Sequoia received certain loan funds from MidCap, which it

25  presumably held in New Jersey. [Complaint, ¶¶ 16, 25, 28].

26

27

28

**I.      Nature of Hayes and Garipalli's Contact with California**

Garipalli and Hayes are and, at all relevant times, have been residents of the State of New York. [Garipalli Decl., ¶ 5; Hayes Decl., ¶ 2]. At best, they travel to California from time to time in connection with business unrelated to Passaic, Sequoia, or Allcare. [Garipalli Dec., ¶ 5; Hayes Decl., ¶ 2].

**J.      Nature of Hayes and Garipalli's Contact with Essex**

The Complaint alleges that all actions taken by Garipalli and Hayes were taken on behalf of Allcare or Sequoia only. *See e.g.,* Complaint at ¶ 17 ("Hayes, acting on behalf of Allcare, approached plaintiff Essex"); *Id.* at ¶ 25 ("Hayes caused Allcare to pay $2,350,000 to Sequoia").

None of the actions allegedly taken with respect to Essex occurred in California. The Allcare lease agreements were generally executed by Hayes in New Jersey or New York. [Hayes Dec., ¶ 4]. Neither Garipalli nor Hayes ever met with Essex or its principal, Iannelli, in California. [Garipalli Dec., ¶ 6; Hayes Dec., ¶ 3].

///

///

///

1  II.  **LEGAL ARGUMENT**

2      **A.  This Court Does Not Have Personal Jurisdiction Over the Defendants**

3      "Personal jurisdiction . . . is an essential element of the jurisdiction of a district . . .

4  court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v.*

5  *Marathon Oil Co.* (1999) 526 U.S. 574, 584.  The burden of establishing that the Court has

6  personal jurisdiction over this matter lies with the plaintiff.  *Menken v. Emm* (9th Cir. 2007)

7  503 F.3d 1050, 1056.  In addition, "mere allegations . . . when contradicted by affidavits,

8  are not enough to confer personal jurisdiction of a nonresident defendant." *VB Conversions*

9  *LLC v. New Solutions, Inc.* (C.D. Cal. May 20, 2013) 2013 U.S. Dist. LEXIS 2370723 at

10  \*3.  Here, the Complaint should be dismissed because this Court does not have personal

11  jurisdiction over any of the Defendants.  Fed. R. Civ. P. 12(b)(2).[1]

12      **B.  None of the Defendants are Subject to "General Jurisdiction" in**

13         **California**

14      A court may exercise "general jurisdiction" (i.e., jurisdiction in *any* matter) over a

15  defendant where the defendant's contacts with the forum state are so "continuous and

16  systematic as to render them at home in the forum state." *Goodyear Dunlop Tires*

17  *Operations, S.A. v. Brown* (2011) 564 U.S. 915, 919.  The standard for demonstrating such

18  jurisdiction is "exacting" that is found only when a defendants' contacts with a forum state

19  are so numerous and extensive as to "approximate physical presence" in the forum state.

20  *Schwarzenegger v. Fred Martin Motor Co.* (9th Cir. 2004) 374 F.3d 797, 801.  This standard

21  has not been met with regard to any of the Defendants.

22         1.  Sequoia Is Not Subject to General Jurisdiction in California

23      As recently reaffirmed by the Supreme Court in *Daimler*, with respect to a

24  corporation, its principle place of business and place of incorporation are the "paradig[m]

---

[1] Federal courts follow state law of the forum in determining the extent of their jurisdiction over the parties.
*Daimler AG v. Bauman*, (2014) 134 S. Ct. 746, 753.  California's long arm jurisdiction statue "allows the
exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution." *Id.*
Accordingly, the relevant inquiry is whether the exercise of jurisdiction in this matter is consistent with
the defendants' federal due process rights. *Id.* Here, it is not.

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS OR, IN THE ALTERNATIVE,
TO TRANSFER VENUE

1  . . . bases for general jurisdiction." *Daimler*, 134 S. Ct. at 760.  Here, Sequoia is a limited

2  liability company formed under the laws of the State of New Jersey, with its principal place

3  of business in New Jersey.  [Garipalli Decl., ¶ 2].  In addition, the underlying members of

4  Sequoia are all residents of New Jersey, New York and Pennsylvania.  [*Id.* at ¶¶ 2, 3].

5  Accordingly, Sequoia is not presumptively subject to general jurisdiction in California.

6       Where a corporation is not domiciled in California, general jurisdiction may only be

7  exercised in "'exceptional case[s] where a 'corporation's operations in a forum . . . [are] so

8  substantial and of such a nature as to render the corporation at home in that State.'"

9  *Hendricks v. New Video Channel America, LLC* (C.D. Cal. 2015) 2015 U.S. Dist. LEXIS

10  74677 at * 6.  This is not such an exceptional case.  Sequoia has no offices, bank accounts,

11  employees, or substantial operations in California.  [Garipalli Decl., ¶ 4].  It has no contacts

12  with the state sufficient to warrant the exercise of general jurisdiction.  *See Brand v.*

13  *Menlove Dodge* (9th Cir. 1986) 796 F.2d 1070, 1073 (collecting cases demonstrating that

14  even business activity in forum state insufficient to establish general jurisdiction).

15            2.    Garipalli and Hayes Are Not Subject to General Jurisdiction in
16                  California

17       "For an individual, the paradigm forum for the exercise of general jurisdiction is the

18  individual's domicile." *Goodyear*, 131 S.Ct. at 2853.  Neither Garipalli nor Hayes are

19  domiciled in California; rather, both are domiciled in the State of New York.  [Garipalli

20  Dec., ¶ 5; Hayes Dec., ¶ 2].  Nor do Garipalli and Hayes have such extensive contacts with

21  California to justify the exercise of general jurisdiction.  At most, each travels to California

22  from time to time in connection with business unrelated to Passaic, Sequoia or Allcare.

23  [Garipalli Dec., ¶ 5; Hayes Dec., ¶ 2].  However, it is well established that the sporadic

24  conduct of business in California is not enough to confer the exercise of general jurisdiction

25  over an individual.  *See Span Const. & Eng'g, Inc. v. Stephens* (E.D. Cal. 2006) 2006 WL

26  1883391 at *6 ("In case after case, when an individual conducts business that requires their

27

28

1  occasional presence in a state, courts have not found sufficient contact for general

2  jurisdiction).

3  **C.     None of the Defendants are Subject to "Specific Jurisdiction" Relating to the Allcare Leases**

4

5  Nor are any of the defendants subject to "specific jurisdiction" in California.

6  "Specific jurisdiction exists where the cause of action arises out of the defendant's

7  [purposeful] contacts with the forum state . . . ." *Hendricks*, 2015 U.S. Dist. LEXIS 74677

8  at * 14 (quoting *Google Inc. v. Rockstar Consortium U.S. LP* (N.D. Cal. 2014) 2014 U.S.

9  Dist. LEXIS 53757 at *18.  The Ninth Circuit has set forth a three-part test to determine

10  whether specific jurisdiction exists in a tort case:  (1) the defendant must have purposefully

11  directed activity to the forum state; (2) the claim must arise out of that activity; and (3) the

12  exercise of jurisdiction must be constitutionally reasonable.  *Schwarzenegger*, 374 F.3d at

13  802.  The plaintiff bears the burden of showing that the first two prongs are met.  *Id.*  If the

14  plaintiff can satisfy the first two prongs, the burden shifts to the defendant to demonstrate

15  why the exercise of jurisdiction would be inappropriate.  *Id.*  Here, Essex cannot bear its

16  burden of demonstrating the first two prongs are satisfied for any of the Defendants.

17  1.     Sequoia Is Not Subject to Specific Jurisdiction in California

18  Even taking all of the allegations of the Complaint as true, Sequoia is not subject to

19  specific jurisdiction in California.  Other than the paragraphs relating to the identification

20  of parties, Essex makes only two allegations even relating to Sequoia:  that Sequoia was

21  the "parent" or "affiliate" of AllCare (which later filed for bankruptcy in New Jersey) and

22  that Sequoia received certain loan funds from MidCap Financial, which it presumably held

23  in New Jersey.  [Complaint, ¶¶ 16, 25, 28].  In other words, Essex does not even allege the

24  existence of some activity by Sequoia directed toward it or the State of California; indeed,

25  Essex does not allege that Sequoia undertook any activity whatsoever in, or directed to,

26  California relating to this case.  *See Amini Innovation Corp. v. JS Imports, Inc.* (N.D. Cal.

27  2007) 497 F. Supp. 2d 1093, 1104 (finding no purposeful direction of activity where

28

1  defendant "never completed any transactions . . . with California residents"). Accordingly,

2  there is simply no basis for the exercise of jurisdiction over Sequoia in this case.

3         2.   <u>Neither Garipalli nor Hayes Are Subject to Specific Jurisdiction in</u>

4             <u>California</u>

5       At its core, Essex's claims are an attempt to avoid the effects of the AllCare

6  bankruptcy by re-characterizing its trade debts with AllCare as instead being the result of

7  fraudulent representations by Garipalli or Hayes, despite the existence of nearly a dozen

8  contracts, signed as late as February 2014[2] expressly disclaiming such representations.

9  [Hayes Dec., ¶ 4 and Exh. "A" attached thereto].   ("IT IS SPECIFICALLY

10  UNDERSTOOD AND AGREED THAT ALL UNDERSTANDINGS AND

11  AGREEMENTS MADE BETWEEN THE PARTIES HERETO RELATIVE TO THIS

12  LEASE ARE MERGED IN THIS AGREEMENT . . . AND NEITHER PARTY RELIES

13  UPON ANY OTHER STATEMENT OR REPRESENTATION, EXCEPT FOR THE

14  CREDIT APPLICATION AND FINANCIAL STATEMENTS OR LESSEE AND ANY

15  GUARANTOR . . . .").

16       Moreover, all of the actions allegedly taken by Garipalli and Hayes were taken by

17  them on behalf of AllCare or Sequoia, not in their individual capacities. *See e.g.,*

18  Complaint at ¶ 17 ("Hayes, acting on behalf of Allcare, approached plaintiff Essex"); ¶ 25

19  ("Hayes caused Allcare to pay $2,350,000 to Sequoia"). "The mere fact that a corporation

20  is subject to local jurisdiction does not necessarily mean its nonresident officers,

21  directors, agents, and employees are suable locally as well." *Winery v. Graham,* (N.D. Cal.

22  2007) 2007 U.S. Dist. LEXIS 22858 at * 15; *see also, Davis v. Metro Productions, Inc.* (9th

23  Cir. 1989) 885 F.2d 515, 520 ("Under the fiduciary shield doctrine, a person's mere

24  association with a corporation that causes injury in the forum state is not sufficient in itself

25  to permit that forum to assert jurisdiction over the person," citing *Weller v. Cromwell Oil*

26  *Co.* (6th Cir. 1974) 504 F.2d 927, 930). More to the point, not one of the allegations of the

27

28

---

[2] *See* Complaint at ¶ 26.

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS OR, IN THE ALTERNATIVE,
TO TRANSFER VENUE

1   Complaint relate to any activity directed by Garipalli or Hayes to the State of California.
2   The Allcare lease agreements were generally executed by Hayes in New Jersey or New
3   York. [Hayes Dec., ¶ 4]. Neither Garipalli nor Hayes ever met with Essex or its principal,
4   Iannelli, in California. [Garipalli Dec., ¶ 6; Hayes Dec., ¶ 3].

5   For personal jurisdiction purposes, there must be a "nexus" between the defendants'
6   activities in the forum state such that "but for" the defendants' forum related activities there
7   would be no claim. *See Panavision Int'l, L.P. v. Toeppen* (9th Cir. 1988) 141 F.3d 1316,
8   1322. Here, all of Garipalli and Hayes' activities giving rise to the alleged Complaint took
9   place in New York or New Jersey, not California. Where, as here, Essex's claim does not
10   arise from Garipalli's or Hayes' tangential (if any) contact with California, Essex cannot
11   carry its burden of demonstrating personal jurisdiction. *See Chemrisk, LLC v. Chappel*,
12   (N.D. Cal. 2011) 2011 WL 1807436 at *7 (failure to demonstrate defendants' action in
13   forum state "standing alone, independently warrants dismissal of this action).

14   **D.    This Case Should Be Dismissed as Improperly Venued**

15   Pursuant to 28 U.S.C. § 1391(b), a case may be brought in the venue (1) in which
16   any defendant resides, if all the defendants are residents of the State in which the district is
17   located; (2) where a "substantial part" of the events or omissions giving rise to the claim
18   occurred, or a substantial party of the property that is the subject of the action is located;
19   or (3) if there is no other district, any jurisdiction in which any defendant is subject to the
20   court's personal jurisdiction. In the present case, the Central District of California does
21   not meet any of these elements.

22   It is undisputed that none of the Defendants are California residents as per
23   § 1391(b)(1), nor, as noted above, are any of the Defendants otherwise subject to personal
24   jurisdiction in the Central District of California as per § 1391(b)(2). With regard to subpart
25   (b)(2), no "substantial part" of the actions giving rise to this complaint took place in
26   California. The original Essex/Allcare transactions were executed in New Jersey or New
27   York, for equipment leased by AllCare out of New Jersey. [Hayes Dec., ¶¶ 1, 3, 4]. The

28

Case No:  2:17-CV-04055-BRO-SK          15          MEMORANDUM OF POINTS AND
                                                    AUTHORITIES IN SUPPORT OF MOTION
                                                    TO DISMISS OR, IN THE ALTERNATIVE,
                                                    TO TRANSFER VENUE

underlying discussions between Essex's Iannelli and Garipalli/Hayes took place primarily in the State of New York.  [Garipalli Dec., ¶ 6; Hayes Dec., ¶ 3].

**E.     In the Alternative, This Case Should Be Transferred to the United States District Court for the Southern District of New York**

Under 28 U.S.C. 1404(a) the district court may transfer an action to another district where the case may have been brought "for the convenience of the parties and witnesses, in the interest of justice.  The decision to transfer "lies within the broad discretion of the trial court" and must be considered on a "case by case" basis. *SP Inv. Fund I, LLC v. Lowry* (C.D. Cal. 2016) 2016 U.S. Dist. LEXIS 17871 at *14.  The analysis is a two-part process. First, the court must determine whether the action could have been brought in the forum suggested by the moving party. *Id.* (citing *Hatch v. Reliance Ins. Co.* (9TH Cir. 1985) 758 F.2d 409, 414.  Next, the court must weigh public and private factors in the interests of justice. *Id.*

**1.     This Case Could Have Been Brought in the Southern District of New York**

Garipalli and Hayes are both residents of the State of New York.  [Garipalli Dec., ¶ 5; Hayes Dec., ¶ 2].  In addition, all of the events giving rise to the Complaint took place in New York or New Jersey.  Sequoia will consent to jurisdiction in the Southern District of New York.  Accordingly, this case could have been brought in the Southern District of New York.

**2.     The Public and Private Factors Weigh In Favor of a New York Forum**

a.     *The Private Factors*

The private factors that a court will consider in connection with a motion for a transfer of venue are:

> (1) the location where the relevant agreements were negotiated and executed; (2) the state that is the most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS OR, IN THE ALTERNATIVE,
TO TRANSFER VENUE

> relating to the plaintiff's cause of action in the forum; (6) the differences in the costs of litigation in the two fora; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof.

*SP Inv Fund I*, 2016 U.S. Dist. LEXIS 17871 at *15 (citing *Jones v. GNC Franchising, Inc.* (9th Cir. 2000) 211 F.3d 495, 298. Here, a balancing of the relevant factors all favor a transfer of venue to the Southern District of New York.

> (1)    *Case and Party Connections to the Southern District of New York*

As noted above, the relevant discussions between Essex and Garipalli/Hayes took place in the State of New York. [Garipalli Decl., ¶ 6; Hayes Dec., ¶ 3]. Garipalli and Hayes are New York residents. [Garipalli Decl., ¶ 5; Hayes Dec., ¶ 2]. Sequoia, a New Jersey limited liability company, is in close proximity to New York. [Garipalli Decl., ¶ 2]. In addition to the parties, the other witnesses in this action will presumably be employees of Passaic. Passaic has its principal place of business in Jersey City, New Jersey — geographically closer to the courthouse of the Southern District of New York than it is to any other federal court. [Hayes Decl., ¶ 1].

As noted above, Hayes had at least 10-15 meetings with Iannelli in New York City, demonstrating that the imposition of a New York forum will not significantly inconvenience him or Essex.

Accordingly, factors (1), (4), (5), and (8) all weigh heavily in favor of a New York City forum.

> (2)    *Familiarity with Governing Law*

The majority of Essex's claims sound in fraud. Under traditional choice of law rules, fraud claims are governed by the law where the challenged representations and actions took place. *In re: First Am. Home Buyers Prot. Corp. Class Action Litig.* (S.D. Cal. 2016) 313 F.R.D. 578, 603 (citing *Mazza v. Am. Honda Motor Co.* (9th Cir. 2012) 666 F.3d 581, 593-

94).  As noted above, in the present case, all such meetings between the parties were in New York, and thus New York law presumably applies.  This factor strongly weighs in favor of a New York forum.

### (3)    *Compulsory Process to Compel Attendance of Non-Party Witnesses*

The potential non-party witnesses mentioned in Essex's Complaint are Todd Coffin ("Coffin") of Source Capital, Landauer Medstar ("Landauer")(a DME provider), and MidCap Financial ("MidCap")(a lender).  According to his LinkedIn biography, Coffin works in New York City.  [Hayes Dec., ¶ 5 and Exh. "**B**" attached thereto].  According to its website, Landauer is based in Manhasset, New York.  [Declaration of Louis Modugno ("Modugno Decl."), ¶ 4 and Exh. "**C**" attached thereto].  The healthcare finance individuals of MidCap are based in Bethesda, Maryland.  [Modugno Decl., ¶ 5 and Exh. "**D**" attached thereto].  Accordingly, factor (7) weighs strongly in favor of a New York forum as to Coffin and Landauer, and is neutral (or slightly favoring New York) as to MidCap.  *See Fodor v. Berglas* (C.D. Cal. 1994) 1994 WL 822477 at *3-4 (finding the Southern District of New York to be more convenient forum than the Central District of California for witnesses in Massachusetts).

### (4)    *Essex's Chosen California Forum*

Essex chose to bring its action in California.  While that choice is generally entitled to some deference, that deference "is substantially reduced, however, when the venue lacks a significant connection to the activities alleged in the complaint."  *SP Inv Fund I*, 2016 U.S. Dist. LEXIS 17871 at *17.  Here, as noted above, nearly all of the activities alleged in the Complaint took place in New York.  Moreover, Essex already participated in the New Jersey Bankruptcy Matter and is involved in other litigations in New Jersey.  *See* Kenneth M. Van Deventer v. Ralph T. Iannelli and Essex Capital Corporation, Case No. 16-cv-3970.

---

Case No:  2:17-CV-04055-BRO-SK             18          MEMORANDUM OF POINTS AND
                                                       AUTHORITIES IN SUPPORT OF MOTION
                                                       TO DISMISS OR, IN THE ALTERNATIVE,
                                                       TO TRANSFER VENUE

(5)   *Costs of Litigation in the Two Fora*

There is nothing to suggest that the litigation costs themselves are significantly different in the Central District of California and the Southern District of New York. That said, for the reasons set forth above, the travel costs incurred by the parties and potential witnesses in this case are likely to be far higher for a California forum than a New York one

b.   *The Public Factors*

The "public factors" analyzed with respect to a motion to transfer venue are "degrees of court congestion, local interest in deciding local controversies, potential conflicts of laws, and burdening citizens of an unrelated forum with jury duty." *SP Inv. Fund I*, 2016 U.S. Dist. LEXIS at * 20-21 (quoting *Brackett v. Hilton Hotels Corp.* (N.D. Cal. 2008) 619 F. Supp. 2d 810, 821. These factors are neutral as between California and New York. *See id; see also, Labrie v. Cobain* (C.D. Cal. 2013) 2013 WL 12131720 at *6 (finding court congestion factor neutral as between Central District of California and Southern District of New York).

As set forth above, several factors weight heavily in favor of a New York forum. Most of the parties and witnesses are subject to jurisdiction or compulsory process in New York; the relevant records are maintained in close proximity to New York; and New York is likely to provide the governing law. All of this is weighted against only Essex's initial choice of a California court. Under the circumstances, Defendants respectfully submit that a transfer is proper. *See SP Inv. Fund I*, 2016 U.S. Dist. LEXIS at * 21-22.

///
///
///

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS OR, IN THE ALTERNATIVE,
TO TRANSFER VENUE

## III.    **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Motion be granted, and the Complaint dismissed as against them.   In the alternative, Defendants respectfully request that this action be transferred to the Southern District of New York.


Dated:  June 7, 2017                                    JACKSON LEWIS P.C.

                                                        By: /s/ Hazel U. Poei
                                                            Hazel U. Poei

                                                        Attorneys for Defendants
                                                        VIVEK GARIPALLI, SEQUOIA
                                                        HEALTHCARE SERVICES, LLC, and
                                                        WINTHROP "WIN" HAYES

4852-7128-4298, v. 1

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS OR, IN THE ALTERNATIVE,
TO TRANSFER VENUE

1

## CERTIFICATE OF SERVICE

2

3

I hereby certify that on June 7, 2017, the foregoing document was electronically

4

transmitted to the United States Court Clerk's Office using the CM/ECF System for filing

5

and transmittal.

6

Dated:  June 7, 2017

7

JACKSON LEWIS P.C.

8

By: /s/ Hazel U. Poei

9

Hazel U. Poei

10

Attorneys for Defendants
VIVEK GARIPALLI, SEQUOIA

11

HEALTHCARE SERVICES, LLC, and

12

WINTHROP "WIN" HAYES

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No:  2:17-CV-04055-BRO-SK          21          MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS OR, IN THE ALTERNATIVE,
TO TRANSFER VENUE