LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17–04055 BRO (SKx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | ESSEX CAPITAL CORPORATION V. VIVEK GARIPALLI ET AL. | | |

| Present: The Honorable | BEVERLY REID O'CONNELL, United States District Judge | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**     (IN CHAMBERS)

## ORDER RE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE [14]

### I.     INTRODUCTION

Pending before the Court is Defendants Vivek Garippalli ("Garippalli"), Sequoia Healthcare Services, LLC ("Sequoia"), and Winthrop Hayes's ("Hayes") Motion to Dismiss First Amended Complaint or, in the alternative, to Transfer Venue. (Dkt. Nos. 14, 14-1 (hereinafter, "Mot." or "Motion").) After considering the papers filed in support of and in opposition to the instant motion, the Court deems this matter appropriate for resolution without oral argument of counsel. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss.

### II.     FACTUAL BACKGROUND

Plaintiff Essex Capital Corporation ("Plaintiff" or "Essex") is a sale-leaseback company, with its principal place of business in Santa Barbara, California. (*See* First Amended Complaint, Dkt. No. 12 (hereinafter, "FAC") ¶ 8.) "Essex primarily makes money by purchasing equipment from companies in need of cash flow and then leasing that equipment back to the company from which it was purchased." (Declaration of Ralph Iannelli in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss, or in the alternative, to Transfer Venue, Dkt. No. 15-1 (hereinafter, "Iannelli Decl.") ¶ 2.)

"Beginning in 2011, Essex entered into a series of equipment leases (the 'Equipment Leases') with a durable medical equipment company known as Passaic Healthcare Services, LLC d/b/a Allcare Medical ('Allcare')." (FAC ¶¶ 18–19; Iannelli

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17–04055 BRO (SKx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | ESSEX CAPITAL CORPORATION V. VIVEK GARIPALLI ET AL. | | |

Decl. ¶ 4.) These equipment leases that Allcare entered into with Essex contained a forum selection clause stating that the "Agreement shall be governed and interpreted in accordance with the laws of the state of Lessor's principal office, and any suit hereon shall be brought in the county of such office." (*See, e.g.*, Dkt. No. 14-6 at 5, ¶ 17.) Defendants Sequoia, Garipalli, and Hayes were not parties to that contract. (*See, e.g.*, Dkt. No. 14-6 at 2 ("Lessor: Essex Capital Corporation[;]" "Lessee: Passaic Healthcare Services LLC").)

Allcare's principal place of business is in New Jersey. (Declaration of Winthrop Hayes in Support of Defendants' Motion to Dismiss First Amended Complaint or, in the alternative, to Transfer Venue, Dkt. No. 14-5 (hereinafter, "Hayes Decl.") ¶ 1.) Hayes "was the President of Allcare during the relevant time period." (FAC ¶ 17; Iannelli Decl. ¶ 4.) Hayes is domiciled in and is a full-time resident of New York. (Hayes Decl. ¶ 2.) Hayes does "not maintain a personal office in California[,] [nor does he] have a personal agent designated for service of process in California." (Hayes Decl. ¶ 2.) Hayes travels "to California from time to time in connection with business unrelated to" Allcare and Sequoia. (Hayes Decl. ¶ 2.)

At the relevant time, Sequoia was the majority owner of Allcare. (*See* FAC ¶ 17; Iannelli Decl. ¶ 4; Declaration of Vivek Garipalli in Support of Defendants' Motion to Dismiss First Amended Complaint or, in the Alternative, to Transfer Venue, Dkt. No. 14-11 (hereinafter, "Garipalli Decl.") ¶ 1.) "Sequoia is a limited liability company formed in the State of New Jersey, with its principal place of business in New Jersey." (Garipalli Decl. ¶ 2.) "Sequoia does not have any physical presence in California." (Garipalli Decl. ¶ 4.) "Specifically, Sequoia has never been licensed to do business in California; does not have a registered agent for service of process in California; does not maintain an office in California; does not have employees or agents based in California (other than its counsel in this legal proceeding); does not hold a bank account in California; does not have a telephone listing in California; has never paid any business tax in California; does not advertise in or otherwise directly aim any of its marketing activities at California; and does not own real or personal property in California." (Garipalli Decl. ¶ 4.)

"At all relevant times, [Garipalli] served as a manager of Sequoia . . . ." (Garipalli Decl. ¶ 1.) Garipalli is "domiciled in and [is] a full-time resident of the State of New York." (Garipalli Decl. ¶ 5.) He does "not maintain a personal office in California, [nor

Case 2:17-cv-04055-BRO-SK   Document 19   Filed 08/18/17   Page 3 of 14   Page ID #:648

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17–04055 BRO (SKx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | ESSEX CAPITAL CORPORATION V. VIVEK GARIPALLI ET AL. | | |

does he] have a personal agent designated for service of process in California." (Garipalli Decl. ¶ 5.) Garipalli travels "to California in connection with business unrelated to . . . Sequoia or Allcare." (Garipalli Decl. ¶ 5.)

Ralph Iannelli ("Iannelli"), Essex's CEO, declares that he "negotiated the Equipment Leases on behalf of Essex while at the company's headquarters in Santa Barbara, [California,] with the support of Essex employee Conor Quinn, who was and is a California resident." (Ianelli Decl. ¶ 5.) Essex further claims that Iannelli "also executed each of the Equipment Leases at Essex's headquarters in Santa Barbara." (Iannelli Decl. ¶ 5.) Hayes maintains that "all discussions between Essex's representatives and [Hayes] that related to Allcare took place in . . . New York." (Hayes Decl. ¶ 3.) Hayes declares that "all of the meetings and relevant discussions between Mr. Iannelli and [Hayes] took place in New York City, including meetings that may have taken place at Mr. Iannelli's business office in New York City." (Hayes Decl. ¶ 3.) Hayes states that "he personally executed each of the . . . sale and original leaseback agreements on behalf of Allcare in . . . New York or New Jersey." (Hayes Decl. ¶ 4.) He further declares that "[t]o the extent that certain of these contracts were executed in California by Essex, money was loaned from California by Essex, or equipment leases were negotiated and signed by Essex in California, those contracts were with Allcare, not with [Hayes] individually, . . . Garipalli, individually, or [with] Sequoia." (Hayes Decl. ¶ 4.)

"By the end of 2014, Allcare had gone from leasing $350,000 worth of equipment from Essex to leasing approximately $10,000,000 worth of equipment from Essex." (FAC ¶ 19; Iannelli Decl. ¶ 4.) "For its first two leases with Essex, Allcare timely paid the rent in full." (FAC ¶ 20.) "Throughout 2013, Defendants met with Iannelli in person and communicated with Iannelli and other Essex representatives by phone and by email." (FAC ¶ 20.) "In these meetings and communications, Defendants represented to Iannelli that the business was on track and that as a result of hiring away the sales team from competitor Landauer Metropolitan ('Landauer'), Allcare would have $125,000,000 to $150,000,000 in projected revenue." (FAC ¶ 20.) "In the summer of 2013, Hayes provided [Iannelli] with financial statements that [Iannelli] later learned were falsified." (Iannelli Decl. ¶ 9.) According to Iannelli, "these falsified statements did not match Allcare's internally distributed financial statements and overstated Allcare's income by approximately $5.5 million." (Iannelli Decl. ¶ 9.) Iannelli declares that he is "informed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17–04055 BRO (SKx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | ESSEX CAPITAL CORPORATION V. VIVEK GARIPALLI ET AL. | | |

and believe[s] that Hayes provided [Iannelli] with these financial statements . . . at the direction of Garipalli." (Iannelli Decl. ¶ 9.) "Unaware of the true state of Allcare's finances, Essex continued to purchase more medical equipment from Allcare and then lease it back to Allcare." (FAC ¶ 24.)

"In October 2013, under the pretext of Allcare's having 'outgrown' its current credit facility, Garipalli sought a larger $10,000,000 credit facility from MidCap Financial Services, LLC ('MidCap') . . . ." (FAC ¶ 25.) "One such condition was that Allcare would use all of the money loaned by MidCap for the ongoing operations of Allcare and not use any of the credit facility to pay creditors or investors." (FAC ¶ 25.) "Another condition reported to Iannelli was that Essex would have to promise to forbear in the exercise of certain rights under the equipment leases for one year." (FAC ¶ 25.) Yet, after securing the financing, Hayes and Garipalli allegedly used $2,350,000 of the loan to repay debts owed to Sequoia. (FAC ¶ 27.)

Essex claims that "[i]n or around January 2014, Iannelli and Garipalli met at a JP Morgan Healthcare Conference in San Francisco." (FAC ¶ 28.) Essex further avers that "[a]t that time, Garipalli again reassured Iannelli that Allcare was in good financial condition and committed to continue to fund the company." (FAC ¶ 28.) Garipalli declares that "[t]he relevant discussions between Essex and [Garipalli] took place in the State of New York." (Garipalli Decl. ¶ 6.) He does "not recall ever meeting with Essex or its principal, . . . Ralph Iannelli . . . , in California, and specifically, at the JP Morgan Healthcare Conference in San Francisco, California. (Garipalli Decl. ¶ 6.) Garipalli declares that he "recall[s] that all of the meetings and discussions between [] Ian[n]elli and [him] took place in New York City." (Garipalli Decl. ¶ 6.)

In April 2014, MidCap significantly reduced Allcare's line of credit. (*See* FAC ¶ 29.) "Despite the undisclosed reduction of their credit source, through the remainder of April 2014, Defendants continued to communicate, via emails and phone calls directed to California, a sunny forecast of Allcare's financial state to Essex." (FAC ¶ 30.)

According to Essex, "[o]nce Iannelli learned that MidCap had cut Allcare's funding and confronted Hayes with that fact, Hayes simply lied that MidCap's actions were the result of a 'glitch in the system' and reassured Iannelli that there was 'no problem with the receivables.'" (FAC ¶ 31.) "When Iannelli questioned Garipalli about

Case 2:17-cv-04055-BRO-SK Document 19 Filed 08/18/17 Page 5 of 14 Page ID #:650

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17–04055 BRO (SKx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | ESSEX CAPITAL CORPORATION V. VIVEK GARIPALLI ET AL. | | |

Allcare's anemic collections, Garipalli continued to assure Iannelli that he was going to personally make good on the lease payments if necessary to keep Allcare afloat if Essex refrained from declaring a default, which would have had a devastating impact on Allcare's business." (FAC ¶ 31.) "Defendants continuously repeated these misrepresentations, in substance and effect, by phone calls and emails knowingly directed to Essex in California." (FAC ¶ 31.)

"In or about June 2014, Hayes finally confessed to Iannelli that MidCap significantly reduced the line of credit because the 'receivables aren't there.'" (FAC ¶ 32.) Although Allcare was making only intermittent payments under the Equipment Leases, Hayes assured Iannelli that Allcare needed approximately 90 days to make everyone whole. (FAC ¶ 32.) Essex refrained from sending a default letter to provide Allcare with additional time to satisfy all of its obligations. (FAC ¶ 32.)

At the end of 2014, Essex sent a default letter to Garipalli. (FAC ¶ 36.) "On December 31, 2014, . . . Allcare filed its petition for bankruptcy." (FAC ¶ 36.) Essex appeared in the New Jersey bankruptcy matter. On May 20, 2015, Essex filed a Proof of Claim in the amount of $4,328,362.74. (*See* Request for Judicial Notice (hereinafter, "RJN") Dkt. No. 14-2, Ex. E, ¶ 1.) In addition, Essex commenced an Adversary Proceeding in the New Jersey Bankruptcy Matter by filing a Complaint against, Allcare, among others; the Adversary Proceeding was ultimately dismissed. (*See* RJN, Ex. F, ¶ 2.)

## III. PROCEDURAL HISTORY

On April 27, 2017, Essex filed its Complaint in the Superior Court of the State of California, County of Santa Barbara. (Dkt. No. 1-1.) Defendants removed this action to federal court on May 31, 2017, based on diversity jurisdiction. (Dkt. No. 1.) On June 7, 2017, Defendants filed a Motion to Dismiss or, in the alternative, to Transfer Venue based on Defendants' claims that this Court does not have personal jurisdiction over Defendants and that the case should be dismissed as it was brought in the improper venue. (Dkt. No. 10-1.) Plaintiff did not oppose that motion, but instead filed a First Amended Complaint on June 28, 2017. (*See* FAC.) Essex's FAC alleges five causes of action for: (1) fraud, (2) concealment; (3) false promise; (4) breach of contract; and, (5) promissory estoppel. (*See* FAC.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17–04055 BRO (SKx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | ESSEX CAPITAL CORPORATION V. VIVEK GARIPALLI ET AL. | | |

On July 12, 2017, Defendants filed the instant Motion to Dismiss or, in the alternative, to Transfer Venue. (*See* Mot.) Plaintiff opposed on July 31, 2017. (Dkt. No. 15 (hereinafter, "Opp'n.").) Defendants replied on August 7, 2017. (Dkt. No. 16 (hereinafter, "Reply").)

## IV. REQUEST FOR JUDICIAL NOTICE

Along with their Motion, Defendants filed a Request for Judicial Notice. (RJN.) Plaintiff requests that the Court take judicial notice of two documents: (1) "Proof of Claim filed by [Essex] in the United States Bankruptcy Court for the District of New Jersey in Case No. 14-36129-CMG, together with Supplement to Proof of Claim filed by [Essex]; and, (2) the Complaint from Essex's adversary proceeding arising from Allcare's bankruptcy filed by Essex in the United States Bankruptcy Court for the District of New Jersey in Case No. 14-36129-CMG, together with summons and Notice of Pretrial Conference. (RJN at 2, Exs. E, F.) Essex does not oppose the request.

The court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (citation omitted). Here, the two court documents from the Allcare bankruptcy proceedings in the United States Bankruptcy Court for the District of New Jersey are related to the instant Motion to the extent they assist the Court with the factual and procedural background of this case. *See id.* Therefore, the Court **GRANTS** Defendants' Request.

## V. LEGAL STANDARD

### A. Standard for Dismissal Under Rule 12(b)(2)

A defendant may move to dismiss an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant challenges personal jurisdiction, the "plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

Where, as here, the motion is based on pleadings and affidavits rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional

Case 2:17-cv-04055-BRO-SK Document 19 Filed 08/18/17 Page 7 of 14 Page ID #:652

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17–04055 BRO (SKx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | ESSEX CAPITAL CORPORATION V. VIVEK GARIPALLI ET AL. | | |

facts to withstand the motion to dismiss." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (internal quotation marks omitted). Although the court must accept all uncontroverted allegations in the complaint as true, "[t]he plaintiff cannot 'simply rest on the bare allegations of its complaint.'" *Id.* (quoting *Schwartzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). Moreover, the court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). But where both parties submit conflicting affidavits, the court must resolve factual disputes in the plaintiff's favor.[1] *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *Schwarzenegger*, 374 F.3d at 800.

In a diversity case, a federal court's power to exercise personal jurisdiction over a non-resident defendant is limited by the law of the forum state and federal constitutional principles of due process. *Data Disc*, 557 F.2d at 1286. California's long-arm statute "is coextensive with federal due process requirements." *Schwarzenegger*, 374 F.3d at 800–01; *see also* Cal. Civ. Pro. Code § 410.10.[2] Thus, a court in California need only analyze whether exercising jurisdiction over a non-resident defendant would comport with federal due process. *Schwarzenegger*, 374 F.3d at 800–01.

To exercise personal jurisdiction over a non-resident defendant, due process requires that the defendant have "certain minimum contacts with [the forum state] such that [maintaining] the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted). Thus, due process protects a defendant by limiting the fora where it must defend suit to those where it would be reasonably foreseeable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Depending on the level of contacts with the forum state, general or specific jurisdiction may be proper. General jurisdiction arises where the

---

[1] A district court has discretion to conduct a preliminary hearing and take evidence to resolve contested issues where "the pleadings and other submitted materials raise issues of credibility or disputed questions of fact with regard to jurisdiction." *Id.* at 1285. In such cases, the plaintiff "must establish the jurisdictional facts by a preponderance of the evidence, just as he would have to do at trial." *Id.*

[2] California Code of Civil Procedure Section 410.10 provides that: "A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."

Case 2:17-cv-04055-BRO-SK   Document 19   Filed 08/18/17   Page 8 of 14   Page ID #:653

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17–04055 BRO (SKx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | ESSEX CAPITAL CORPORATION V. VIVEK GARIPALLI ET AL. | | |

defendant's contacts with or activities in the forum state are so substantial, or "continuous and systematic," as to justify the exercise of jurisdiction over it with respect to all matters. *Data Disc*, 557 F.2d at 1287. Specific jurisdiction arises where the defendant's contacts with the forum state give rise to the plaintiff's suit. *Id.*

### B.     Standard for Dismissal Under 12(b)(3)

Under Federal Rule of Civil Procedure 12(b)(3), a party may file a motion to dismiss for improper venue. Fed. R. Civ. P. 12(b)(3). Pursuant to 28 U.S.C. § 1391(b), "[a] civil action may be brought in[:] (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which any action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C.A. § 1391.

### C.     Transfer Pursuant to 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). On a motion to transfer venue, "[t]he burden is on the moving party to establish that a transfer would allow a case to proceed more conveniently and better serve the interests of justice." *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1109 (C.D. Cal. 2007). "A court ruling on a motion to transfer must balance the convenience of parties and witnesses, and the interests of justice." *Pfeiffer v. Himax Techs., Inc.*, 530 F. Supp. 2d 1121, 1123 (C.D. Cal. 2008) (citing 28 U.S.C. § 1404(a)).

In analyzing the "interests of justice" involved, a number of factors are relevant, including the following: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of the compulsory process to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17–04055 BRO (SKx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | ESSEX CAPITAL CORPORATION V. VIVEK GARIPALLI ET AL. | | |

compel attendance of unwilling non-party witnesses; and, (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). "No single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Sharma v. Globalfoundries U.S., Inc.*, No. 5:15-CV-03631-EJD, 2016 WL 2742399, at *1 (N.D. Cal. May 11, 2016) (citation omitted).

## VI. DISCUSSION

Defendants seek to dismiss the FAC or, in the alternative, to transfer venue pursuant to 12(b)(2) and (3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404 and request the following relief: (1) to dismiss the FAC in its entirety against all Defendants for lack of personal jurisdiction or improper venue; or, in the alternative, (2) to transfer this case to the United States District Court for the Southern District of New York. (Mot. at 1.) The Court will first address whether California has personal jurisdiction over Defendants.

In their Motion, Defendants argue that they are not subject to general jurisdiction in California. (Mot. at 7–8.) In Essex's Opposition, Essex concedes that it "lacks sufficient information to challenge Defendants' assertions regarding general jurisdiction." (Opp'n. at 7.) As a result, because it is clear that the focus of the personal jurisdiction issue is whether Defendants are subject to specific jurisdiction in California, not general jurisdiction, the Court will address the parties' arguments with respect to specific jurisdiction, as it finds it unnecessary to address general jurisdiction when Plaintiff has not met its burden of establishing that general jurisdiction is proper. *Boschetto*, 539 F.3d at 1015 (explaining that once a defendant challenges personal jurisdiction, the "plaintiff bears the burden of establishing that jurisdiction is proper").

Specific jurisdiction exists only when the plaintiff's claims are "related to or arise" out of the defendant's contacts with or activities in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal quotation marks omitted). The Ninth Circuit has established the following three-prong test for analyzing claims of specific personal jurisdiction:

Case 2:17-cv-04055-BRO-SK Document 19 Filed 08/18/17 Page 10 of 14 Page ID #:655

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17–04055 BRO (SKx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | ESSEX CAPITAL CORPORATION V. VIVEK GARIPALLI ET AL. | | |

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of establishing the first two prongs. *Id.* Once the plaintiff meets this burden, the burden shifts to the defendant "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King*, 471 U.S. 477).

"The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment." *Mavrix Photo, Inc.*, 647 F.3d at 1228. "In order for a court to have specific jurisdiction over a defendant, 'the defendant's suit-related conduct must create a substantial connection with the forum State.'" *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017) (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014)). "The relationship between the defendant and the forum state must arise out of contacts that the defendant [itself] creates with the forum State." *Id.* (quoting *Walden*, 134 S. Ct. at 1122) (internal quotation marks omitted). "Additionally, the requisite 'minimum contacts' must be 'with the forum State itself, not . . . with persons who reside there.'" *Id.*

As to Sequoia, it "is a limited liability company formed in the State of New Jersey, with its principal place of business in New Jersey." (Garipalli Decl. ¶ 2.) "Sequoia does not have any physical presence in California." (Garipalli Decl. ¶ 4.) "Specifically, Sequoia has never been licensed to do business in California; does not have a registered agent for service of process in California; does not maintain an office in California; does not have employees or agents based in California (other than its counsel in this legal

Case 2:17-cv-04055-BRO-SK Document 19 Filed 08/18/17 Page 11 of 14 Page ID #:656

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17–04055 BRO (SKx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | ESSEX CAPITAL CORPORATION V. VIVEK GARIPALLI ET AL. | | |

proceeding); does not hold a bank account in California; does not have a telephone listing in California; has never paid any business tax in California; does not advertise in or otherwise directly aim any of its marketing activities at California; and does not own real or personal property in California." (Garipalli Decl. ¶ 4.) Thus, the only connection that Plaintiffs identify between Sequoia and California is via Allcare. "Accordingly, we must ask whether [Allcare's] in-state connections [with Essex] may be attributed to [Sequoia] under an agency theory for the purpose of establishing specific jurisdiction." *Williams*, 851 F.3d at 1023.

The Ninth Circuit's decision in *Williams* helps guide this Court's analysis. In *Williams* the court explained, "while *Daimler* voided [the Ninth Circuit's] approach for imputing contacts for the purpose of general jurisdiction, it left open the question of whether an agency relationship might justify the exercise of specific jurisdiction." *Id.* at 1023 (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 n.13 (2014)). The Ninth Circuit also noted that "[n]otwithstanding *Daimler's* express reservation on the question of agency theory's application to specific jurisdiction, more than one district court within our circuit has expressed some uncertainty on that point post-*Daimler*, as 'the rationale set forth in *Daimler* . . . would seem to undermine application of [our agency test] even in specific jurisdiction cases.'" *Id.* (quoting *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 982 (N.D. Cal. 2016)).

The Ninth Circuit ultimately determined that *Daimler's* reasoning is clearly irreconcilable with the Ninth Circuit's agency test in *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2001). *Williams*, 851 F.3d at 1024. Thus, the Ninth Circuit rejected that its "formulation for finding an agency relationship should survive in the context of specific jurisdiction." *Id.* However, the Court continued, stating, "[a]ssuming, however, that some standard of agency continues to be 'relevant to the existence of *specific* jurisdiction,'" the plaintiffs in *Williams* failed "to make out a prima facie case for any such agency relationship." *Id.* "Fundamental tenets of agency theory require that an agent 'act on the principal's behalf and subject to the principal's control.'" *Id.* (quoting Restatement (Third) of Agency § 1.01 (2006)). "Accordingly, under any standard for finding an agency relationship, the parent company must have the right to substantially control its subsidiary's activities." *Id.* at 1024–25. The Court explained that the plaintiffs in *Williams* "neither allege nor otherwise show that [the parent company] had the right to control [the subsidiary's] activities in any manner at all." *Id.* at 1025.

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17–04055 BRO (SKx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | ESSEX CAPITAL CORPORATION V. VIVEK GARIPALLI ET AL. | | |

"Consequently, even assuming the validity of some formulation of agency analysis such that a subsidiary's contacts *could* be attributed to its parent, [plaintiffs] failed to establish specific jurisdiction over [the parent company]." *Id.*

In considering the court's decision in *Williams*, the Ninth Circuit made clear that its prior test to impute a subsidiary's contacts as the basis for specific jurisdiction to the parent company is no longer valid after the Supreme Court's decision in *Daimler*. *Id.* at 1024. The Ninth Circuit also questioned whether any sort of agency analysis can apply such that a subsidiary's contacts can be imputed to a parent company for the purposes of specific jurisdiction. *Id.* at 1025. However, just as the court held in *Williams*, here, Essex has not alleged that Sequoia had the right to control Allcare's activities in such a manner that Allcare's contacts should be imputed to Sequoia. *See id.* at 1025. Essex does not allege that Sequoia controlled Allcare's decisions or operations, but rather, Essex alleges that Sequoia "*funded* Allcare's operations . . . , thereby making Sequoia a major creditor of Allcare—in addition to being its parent company and controlling shareholder." (FAC ¶ 17.) Thus, as to specific jurisdiction over Sequoia, Essex has not established that the first prong for specific jurisdiction is met. *See Schwarzenegger*, 374 F.3d at 802.

As to Garipalli, who "[a]t all relevant times . . . served as a manager of Sequoia[,]" Garipalli is "domiciled in and [is] a full-time resident of the State of New York." (Garipalli Decl. ¶ 5.) He does "not maintain a personal office in California, [nor does he] have a personal agent designated for service of process in California." (Garipalli Decl. ¶ 5.) Garipalli travels "to California in connection with business unrelated to . . . Sequoia or Allcare." (Garipalli Decl. ¶ 5.) Essex claims that "[i]n or around January 2014, Iannelli and Garipalli met at a JP Morgan Healthcare Conference in San Francisco." (FAC ¶ 28.) Essex further avers that "[a]t that time, Garipalli again reassured Iannelli that Allcare was in good financial condition and committed to continue to fund the company." (FAC ¶ 28.) Garipalli declares that "[t]he relevant discussions between Essex and [Garipalli] took place in the State of New York." (Garipalli Decl. ¶ 6.) He does "not recall ever meeting with Essex or its principal, . . . Ralph Iannelli . . . , in California, and specifically, at the JP Morgan Healthcare Conference in San Francisco, California. (Garipalli Decl. ¶ 6.) Garipalli declares that he "recall[s] that all of the meetings and discussions between [] Ian[n]elli and [him] took place in New York City." (Garipalli Decl. ¶ 6.)

Case 2:17-cv-04055-BRO-SK Document 19 Filed 08/18/17 Page 13 of 14 Page ID #:658

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 17–04055 BRO (SKx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | ESSEX CAPITAL CORPORATION V. VIVEK GARIPALLI ET AL. | | |

Even assuming that Garipalli and Iannelli met once in San Francisco during a JP Morgan Healthcare Conference, the purpose of Garipalli being in San Francisco appears to be because of the Healthcare Conference, not for any business dealing between Garipalli and Essex. (*See* Garipalli Decl. ¶ 6; Iannelli Decl. ¶ 13.) The one alleged conversation that occurred in San Francisco at the conference (which Garipalli declares did not occur) does not serve as the crux of Plaintiff's claims, such that Essex's claims "arise[] out of or relates to the defendant's forum-related activities." *Schwarzenegger*, 374 F.3d at 802. Therefore, Essex fails to establish that it satisfied the second prong required for personal jurisdiction as to Garipalli.

Finally, as to Hayes, Hayes claims that "all discussions between Essex's representatives and [Hayes] that related to Allcare took place in . . . New York." (Hayes Decl. ¶ 3.) Hayes declares that "all of the meetings and relevant discussions between Mr. Iannelli and [Hayes] took place in New York City, including meetings that may have taken place at Mr. Iannelli's business office in New York City." (Hayes Decl. ¶ 3.) Hayes states that "he personally executed each of the . . . sale and original leaseback agreements on behalf of Allcare in . . . New York or New Jersey." (Hayes Decl. ¶ 4.) He further declares that "[t]o the extent that certain of these contracts were executed in California by Essex, money was loaned from California by Essex, or equipment leases were negotiated and signed by Essex in California, those contracts were with Allcare, not with [Hayes] individually, . . . Garipalli, individually, or [with] Sequoia." (Hayes Decl. ¶ 4.)

Because Hayes is being sued in his individual capacity, the agency issue is again implicated, and this Court must determine whether Allcare's contacts with California can be imputed to Hayes for purposes of specific jurisdiction. *See Williams*, 851 F.3d at 1023. *Williams* did not address whether an individual can be haled into Court based on an agency relationship with a company that might have sufficient contacts with a forum state. *See id.* at 1023–25. *Williams* did, however, question whether "some standard of agency [even] continues to be 'relevant to the existence of *specific* jurisdiction[.]'" *Id.* at 1024. Even assuming that California would have specific jurisdiction over Allcare, and the Court need not opine whether it does, "[t]he mere fact that a corporation is subject to local jurisdiction does not necessarily mean that its nonresident officers, directors, agents, and employees are suable locally as well." *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104 (C.D. Cal. 1999) (citing *Calder v. Jones*, U.S. 783, 790 (1984)); *Davis v.*

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 17–04055 BRO (SKx) | Date | August 18, 2017 |
|---|---|---|---|
| Title | ESSEX CAPITAL CORPORATION V. VIVEK GARIPALLI ET AL. | | |

*Metro Prods., Inc.*, 885 F.2d 515, 521 (9th Cir. 1989). Further, Essex does not allege that Hayes is the alter-ego of Allcare (and the question still remains whether specific jurisdiction via agency is permissible), such that any contacts by Allcare should be imputed to Hayes. (*See* FAC.) Thus, Essex has not met its burden in establishing that any of Allcare's conduct should be imputed to Hayes as an individual, such that it supports finding that Essex has established that Hayes as an individual has purposefully directed his activities at California, failing the first prong of the specific jurisdiction test. *Schwarzenegger*, 374 F.3d at 802.

In sum, Plaintiff has not met its burden that Defendants have sufficient contacts with California to support specific jurisdiction. Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss based on lack of personal jurisdiction. As a result, the Court need not address whether venue is proper or conduct an analysis regarding transferring venue.

## VII. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss for lack of personal jurisdiction. The hearing set for August 21, 2017 is hereby **VACATED**.

**IT IS SO ORDERED.**

:

Initials of Preparer    rf